**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

        v.                                  **Criminal Action No. 1:08CR52**

**ASHLEY ADKINS,**
      **Defendant.**

## ORDER/OPINION REGARDING PLEA OF GUILTY

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, Ashley Adkins, in person and by counsel, Katy Ratai, appeared before me on September 26, 2008. The Government appeared by John C. Parr, its Assistant United States Attorney.

Thereupon, the Court proceeded with the Rule 11 proceeding by first placing Defendant under oath. The Court then determined that Defendant was prepared to enter a plea of "Guilty" to Count Six of the Indictment. The Court then determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. Upon which, counsel for the Government advised that the parties had re-executed the agreement this date, solely to substitute the signature of Ms. Ratai for that of L. Richard Walker, who had originally signed the agreement for Ms. Ratai. The written agreement was otherwise identical, with the exception that the date in paragraph 8, by which Defendant must have signed the agreement, was amended from September 4, 2008, to September 10, 2008. Both counsel and Defendant initialed that amendment. The Court then asked counsel for the Government to summarize the written Plea Agreement. Defendant stated that the agreement as summarized by counsel for the Government was correct and complied with her understanding of the agreement. The Court **ORDERED** the written Plea Agreement filed.

The Court next inquired of Defendant concerning her understanding of her right to have an Article III Judge hear the entry of her guilty plea and her understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant thereafter stated in open court that she voluntarily waived her right to have an Article III Judge hear and accept her plea and voluntarily consented to the undersigned Magistrate Judge hearing and accepting her plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of her counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Ashley Adkins, only after having had her rights fully explained to her and having a full understanding of those rights through consultation with her counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The undersigned Magistrate Judge further examined Defendant relative to her knowledgeable and voluntary execution of the written plea bargain agreement dated August 25, 2008, and signed by her on September 10, 2008, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant. The undersigned then inquired of Defendant regarding her understanding of the written plea agreement. Defendant stated she understood the terms of the written plea agreement and also stated that it

contained the whole of her agreement with the Government and no promises or representations were made to her by the Government other than those terms contained in the written plea agreement.

The undersigned Magistrate Judge further inquired of Defendant, her counsel, and the Government as to the non-binding recommendations contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count Six of the Indictment, the undersigned Magistrate Judge would write the subject Order and would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court, and only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court adjudicate the Defendant guilty of the felony offense contained in Count Six of the Indictment and make a determination as to whether to accept or reject any recommendation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations contained in the written plea agreement and/or sentenced her to a sentence which was different from that which she expected, she would not be permitted to withdraw her guilty plea. Defendant and her counsel each acknowledged their understanding and Defendant maintained her desire to have her plea of guilty accepted.

The undersigned then reviewed the parties' stipulation, which states:

Pursuant to Sections 6B1.4, 1B1.3, and 2D1.1 [Application Note 12] of the guidelines, the parties hereby stipulate and agree that the total drug relevant conduct of the defendant is between five (5) and twenty (20) grams of cocaine base.

3

The undersigned then determined that the parties understood that the Court is not bound by the above stipulation, and Defendant understood that if the stipulation was not accepted by the Court, she would still not have the right to withdraw her plea of guilty.

The undersigned then reviewed with Defendant Count Six of the Indictment, the statutory penalties applicable to an individual adjudicated guilty of the felony charge contained in Count Six of the Indictment, the impact of the sentencing guidelines on sentencing in general, and inquired of Defendant as to her competency to proceed with the plea hearing. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charge pending against her and understood the possible statutory maximum sentence which could be imposed upon her conviction or adjudication of guilty on that charge was imprisonment for a term of not more than twenty (20) years; understood that a fine of not more than $1,000,000.00 could be imposed; understood that both fine and imprisonment could be imposed; understood she would be subject to a period of at least three (3) years of supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable on or before the date of sentencing. She also understood she might be required by the Court to pay the costs of her incarceration and supervised release.

Defendant also understood that her actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that she understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced her to a higher sentence than she expected, she would not be permitted to withdraw her guilty plea. Defendant further understood there was no parole in the federal system, although she may be able

to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

The undersigned Magistrate Judge further examined Defendant with regard to her understanding of the impact of her waiver of her appellate rights as contained in the written plea agreement as follows:

Ct: I want you to take a look, if you would, please, to paragraph 11. Do you understand that under certain circumstances you may have a right to appeal any sentence that is imposed upon you by the Court?

Def: Yes.

Ct: Now that appeal would have to be made within ten days of the oral pronouncement of your sentence by the district Judge. Did you understand that?

Def: Yes.

Ct: Do you also understand that under certain circumstances you may be able to file a motion under Title 28 USC section 2255, to collaterally attack or challenge how your sentence was calculated and imposed?

Def: Yes.

Ct: Do you understand that under paragraph 11, that if the District Judge sentences you within the statutory maximum that I've already reviewed with you, you give up your right to directly challenge your sentence or appeal your sentence, and you give up your right to collaterally attack your sentence?

Def: Yes.

Ct: Now what that means to you as a practical matter, is while you're sitting in jail, if an appeal was filed or if a collateral challenge was filed under 28 USC 2255, the court reviewing that challenge would have a right to look back at the transcript of today's proceeding, the transcript of the sentencing hearing, your agreement, and if it determined that the court had sentenced you within the statutory maximum . . . . the court could throw out your appeal, could throw out your collateral challenge, without ever giving you an opportunity to be heard, because you gave it up– you waived it. Do you understand that?

Def: Yes.

From which colloquy the Court determined that Defendant understood her appellate rights and voluntarily gave them up in exchange for the concessions made by the United States pursuant to the plea agreement.

The undersigned Magistrate Judge further cautioned and examined Defendant under oath concerning all matters mentioned in Rule 11.

The undersigned then reviewed with Defendant Count Six of the Indictment, including the elements the United States would have to prove at trial, charging her with Possession with Intent to Distribute Cocaine Base, in violation of Title 21, United States Code, § 841(a)(1) and 841(b)(1)(C).

The Court then heard the testimony of Government witness City of Morgantown Police Officer Jason Ammons, who testified he was assigned to the Mon Valley Drug Task Force, a local narcotics task force, and to by the DEA as a Drug Task Force Officer. He had developed a confidential informant ("CI") who was aware of Defendant's involvement in the distribution of crack cocaine in the Morgantown area. He arranged for the CI to make controlled buys of crack cocaine from Defendant. Generally, and on the specific occasion charged in Count Six, the CI

would make a recorded and monitored phone call to Defendant on her cell phone. Defendant then would advise the CI she would be down to meet her either in a cab or with one of her friends. The CI would wait with officers until Defendant arrived. Defendant would arrive, either in a cab or with a friend, and pick up the CI. The CI was provided with a recorder/transmitter. After picking up the CI, the vehicle would travel across Morgantown to West Run Road. Defendant would then enter the first building of the West Run Apartments. A black male was seen exiting the same door. The phone number was identified as belonging to Larry Sellers, and the building manager said that Larry Sellers lived in room 3302. After a minute or so, Defendant would exit the building and return to the vehicle. At some time during the return trip, she would supply the CI with crack cocaine.

On May 8, 2008, a controlled buy had been arranged between the CI and Defendant. Defendant came in a vehicle registered to a Miss Watson, and picked up the CI. The CI gave Defendant $140.00 in recorded "buy" money. Defendant then went into the apartment building and entered room 3302. She exited after a minute or so. Upon exiting the building, Defendant was detained by police. Two separate baggies of crack cocaine were found on Defendant's person. Laboratory testing indicated the baggies contained 1.8 grams of cocaine base. Defendant made a statement to police, saying she purchased the crack cocaine that day from a male she did not know. She had tried to call Larry Sellers, but he had never showed up. The male who had been in the apartment was detained, and Defendant identified him as the man who had sold her the crack cocaine.

Upon searching the apartment police located $3,000.00 in a sweatshirt. The "buy money" was included in that money.

Ms. Watson stated to police that her purpose was to drive Defendant and that she would give Defendant $40.00 to buy crack cocaine for herself as well.

The events specifically contained in Count Six took place on May 8, 2008, in Morgantown, West Virginia, within the Northern District of West Virginia.

Defendant testified that she heard, understood, and agreed with Officer Ammons' testimony. Thereupon, Defendant, Ashley Adkins, with the consent of her counsel, Katy Ratai, proceeded to enter a verbal plea of **GUILTY** to the felony charge contained in Count Six of the Indictment. Defendant then stated she believed she was guilty of the crime charged in Count Six of the Indictment because she "went and bought crack for these people." She further testified that "these people" meant the confidential informant; that she did have crack cocaine on her on May 8, 2008; and that she had gotten the crack cocaine to deliver to another person.

The undersigned United States Magistrate Judge concludes the offense charged in Count Six of the Indictment is supported by an independent basis in fact concerning each of the essential elements of such offense. This conclusion is supported by Officer Ammons' testimony as well as by Defendant's own allocution.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood her right to have an Article III Judge hear and accept her plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing and accepting her plea; Defendant understood the charges against her, not only as to the Indictment as a whole, but in particular as to Count Six of the Indictment; Defendant understood the consequences of her plea of guilty; Defendant made a knowing and voluntary plea of guilty to Count Six of the Indictment; and

Defendant's plea is independently supported by the testimony of Officer Ammons, which provides, beyond a reasonable doubt, proof of each of the essential elements of the charge to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore **ACCEPTS** Defendant's plea of guilty to the felony charge contained in Count Six of the Indictment and recommends she be adjudged guilty on said charge as contained in Count Six of the Indictment and have sentence imposed accordingly.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant is continued on release pursuant to an Order Setting Conditions of Release previously entered in this matter.

The Clerk of the Court is directed to send a copy of this Order to counsel of record.

DATED: September 28, 2008.

s/ *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE